UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENNETH KARWACKI,

        Plaintiff,

  v.                                                            Case No. 24-cv-1639-bhl

JOSH KAUL,

        Defendant.

## ORDER GRANTING MOTION TO DISMISS

      On December 19, 2024, Plaintiff Kenneth Karwacki filed this lawsuit against Defendant Josh Kaul, the current Attorney General of the State of Wisconsin. (ECF No. 1.) Karwacki contends that he was unlawfully denied a concealed carry permit based on Wis. Stat. §941.29(1m)(b), a statute that prohibits a person from possessing a gun if he or she was previously convicted of a crime in another jurisdiction that would be a felony in Wisconsin. Karwacki, who was previously convicted in a military court of distributing peyote, argues that Section 941.29(1m)(b) is unconstitutional both facially and as applied to him. Defendant has moved to dismiss the complaint for failure to state a claim. (ECF No. 5.) For the reasons discussed below, the Court will grant the motion and dismiss the case.

### FACTUAL ALLEGATIONS

      Karwacki is an adult resident of the Eastern District of Wisconsin. (ECF No. 1 ¶8.) He is not a convicted felon. (*Id.* ¶17.) Karwacki has a criminal record, however. He was previously convicted of a misdemeanor in a military court for unlawfully delivering peyote. (*Id.* ¶3.) That misdemeanor conviction resulted in Karwacki receiving a bad conduct discharge. (*Id.*)

      Sometime after his conviction and discharge, Karwacki applied for a concealed carry permit in Wisconsin. (*Id.* ¶15.) His application was initially denied on grounds that he had been convicted of a felony. (*Id.* ¶16.) Karwacki requested review of the determination, explaining that he had not been convicted of a felony. (*Id.* ¶¶17–18.) On December 9, 2024, his request was again denied, this time along with an explanation that Wis. Stat. §941.29(1m)(b) precluded him from

possessing a firearm because his peyote conviction would have been a felony under Wisconsin law. (*Id.* ¶¶19–20.)

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must do more, however, than "recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint survives a 12(b)(6) motion when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint will be dismissed if it fails to allege sufficient facts to state a claim on which relief may be granted. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ANALYSIS

Under Wis. Stat. §941.29(1m)(b), a person that "has been convicted of a crime elsewhere that would be a felony if committed" in Wisconsin is prohibited from possessing a gun in the state. Because Karwacki has been convicted in military court of delivering peyote, an offense that would be a felony in Wisconsin, *see* Wis. Stat. §961.41(1)(a), the Wisconsin DOJ concluded that he was prohibited from possessing a gun under the plain language of the statute and denied his application for a concealed carry permit. Karwacki challenges the constitutionality of Section 941.29(1m)(b), both on its face and as applied to him, insisting the statute violates the Second Amendment. (ECF No. 1 ¶¶21, 36.) Defendant seeks dismissal of Karwacki's claims, insisting that Karwacki's challenges to the statute fail to state a claim for relief. (ECF Nos. 5 & 6.)

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. Although the scope of this protection received little judicial attention for most

of the country's history, over the last two decades the Supreme Court has decided a series of cases clarifying the Second Amendment's application. *See District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1 (2022); *United States v. Rahimi*, 602 U.S. 680 (2024). In these rulings, the Court has confirmed that the right to keep and bear arms is not a vacuous platitude—it places real limits on government efforts to restrict an individual's possession of a firearm. At the same time, the Court has emphasized that the right is not without limitation and the government can, within acceptable limits, regulate firearm possession and use without offending the Constitution.

In *Heller*, the Supreme Court confirmed that the "core" of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 630, 635. Relying upon this principle, the Court struck down a District of Columbia law that, among other things, banned handgun possession in the privacy of an individual's home. *Id.* at 635. Two years later, in *McDonald*, the Supreme Court confirmed that the right to keep and bear arms is among the federal rights protected from state interference by the Due Process Clause of the Fourteenth Amendment. 561 U.S. at 791. More recently, in 2022, the Supreme Court decided *Bruen* and laid out a framework for analyzing Second Amendment challenges to firearm regulations. Focusing on the original public meaning of the Second Amendment, the Court explained that the fundamental question in assessing the permissibility of a firearm restriction is whether the challenged law "is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 17. The Supreme Court further explained that the central considerations are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29.

In 2024, the Supreme Court offered a specific application of the *Bruen* methodology in *Rahimi* and rejected a facial challenge to a federal statute barring an individual who is subject to a domestic violence restraining order from possessing a firearm. 602 U.S. at 699–700. *Rahimi* reversed a Fifth Circuit decision that had incorrectly read *Bruen*'s reasoning by analogy approach "to require a 'historical twin' rather than a 'historical analogue.'" *Id.* at 701 (citation omitted). The Supreme Court emphasized that the analysis should focus on "whether the challenged regulation is consistent with the principles that underpin our regulatory tradition" and "whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." *Id.* at 692 (citing *Bruen*, 597 U.S. at 26–31). This requires consideration of both "why" and "how" a

regulation burdens the right to bear arms. *Id*. As to the first question, "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* As to the second question, a modern regulation addressing the same problem need not "precisely match its historical precursors," so long as it "comport[s] with the principles underlying the Second Amendment." *Id.* Even then, however, a restriction will offend the Second Amendment if it addresses the problem "to an extent beyond what was done at the founding." *Id.*

Seventh Circuit precedent provides additional guidance. In *United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023), the Seventh Circuit upheld a district court's denial of a Second Amendment challenge to the prosecution of a defendant for making a false statement to a federal firearms dealer in violation of 18 U.S.C. §922(a)(6). Citing *Bruen*, the Court of Appeals emphasized that the government can "keep firearms out of the hands of dangerous people who are apt to misuse them." *Id*. at 1017–18 (citing *Bruen*, 597 U.S. at 26, 55–60, 80–81). In *United States v. Gay*, 98 F.4th 843 (7th Cir. 2024), the Seventh Circuit rejected a Second Amendment challenge to a statute prohibiting convicted felons from possessing firearms. Citing *Heller*, *McDonald*, and *Bruen*, the Seventh Circuit explained that the defendant's contention that convicted felons had a Second Amendment right to possess firearms was "hard to square" with the Supreme Court's repeated emphasis that longstanding prohibitions on the possession of firearms by felons remained valid. *Id*. at 846 (collecting cases). Echoing its statements in *Holden*, the Court of Appeals emphasized the Supreme Court's teaching that the persons who possess rights under the Second Amendment are "'law-abiding, responsible citizens' or a variant." *Id.* (quoting *Bruen*, 597 U.S. at 26).

Finally, just a few months ago, in *United States v. Rush*, 130 F.4th 633 (7th Cir. 2025), the Seventh Circuit confirmed that a statute criminalizing possession of an unregistered short-barreled rifle did not violate the Second Amendment. The Court of Appeals determined that, under *Bruen*'s framework, the statute was facially constitutional given that several analogous, historical laws existed at the time of the founding and those laws were deemed acceptable means to prevent unnecessary violence. *Id.* at 641–45 (citing *Bruen*, 597 U.S. at 56; *Rahimi*, 602 U.S. at 697). With respect to the "how" and "why" questions under *Bruen* and *Rahimi*, the Seventh Circuit

emphasized that "common sense" permits a legislature to "limit weapons where the likely use for the weapon is a violent breach of the peace." *Id.* at 643.

I. **Karwacki Fails to State a Claim that Section 941.29(1m)(b) Is Unconstitutional As Applied to Him.**

To succeed on an as applied challenge, Karwacki must show that Section 941.29(1m)(b) is unconstitutional as applied to the particular facts of his case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011). Karwacki argues that the statute is unconstitutional because he does not have a felony conviction, no federal law bars him from possessing a firearm, and "passing out peyote among friends for which a misdemeanor was deemed appropriate" does not warrant stripping a person of his Second Amendment rights. (ECF No. 8 at 5, 9.) Defendant insists to the contrary, that because Karwacki was convicted of delivering peyote, he is outside the scope of individuals afforded Second Amendment rights and the statute is constitutional as applied to him. (ECF No. 6 at 7–9.)

Under the Supreme Court's teachings in *Bruen* and *Rahimi*, the dispositive issue is whether Section 941.29(1m)(b) "is consistent with the principles that underpin our regulatory tradition" and "relevantly similar" to laws that our nation's "tradition is understood to permit." *See Rahimi*, 602 U.S. at 692; *see also Bruen*, 597 U.S. at 28–29. In resolving this issue, the Court must focus on "why" and "how" Section 941.29(1m)(b) limits Karwacki's right to bear arms. *See Rahimi*, 602 U.S. at 692.

With respect to the "why" question, Defendant argues that the Seventh Circuit in *Gay* recognized a long-established tradition of disqualifying individuals convicted of dangerous crimes from possessing firearms. (ECF No. 6 at 5–6.) Defendant maintains that Section 941.29(1m)(b) was enacted for this same, legitimate purpose. (*Id.* at 6–7.)

Under the caselaw, Defendant is correct. As explained in *Rahimi*, this nation has an established history of laws restricting access to firearms to disarm individuals found to pose "a clear threat of physical violence to another." 602 U.S. at 698. The Seventh Circuit confirmed this was an appropriate purpose for firearms regulation in *Holden* and *Gay*, explaining that this nation has a history of keeping firearms out of the hands of dangerous individuals. *Holden*, 70 F.4th at 1017–18; *Gay*, 98 F.4th at 846–47. The State of Wisconsin's goal in enacting Wis. Stat. §941.29(1m)(b)—to keep firearms out of the hands of individuals Wisconsin deems dangerous— is therefore sufficient to pass Second Amendment muster.

With respect to the "why" question, the challenged statute may offend the Second Amendment even if it addresses a proper purpose if the means Wisconsin has chosen to achieve its goal unduly burdens Karwacki's right to bear arms. *See Rahimi*, 602 U.S. at 692. Defendant must establish that Section 941.29(1m)(b) is sufficiently similar to its historical predecessors, even if not a precise match for them. *Id.* at 701. This requires the Court to analyze whether Section 941.29(1m)(b) comports with underlying constitutional principles and whether it goes beyond the means used to address the problem at the founding. *Id.*

Defendant justifies Section 941.29(1m)(b) as constitutional because felon-in-possession statutes have consistently been upheld as constitutional. (ECF No. 6 at 7–8.) Defendant relies largely upon this Court's decision in *United States v. Neal*, No. 23-cr-0141-bhl, 2024 WL 1794424 (E.D. Wis. Apr. 25, 2024), rejecting a challenge to a federal felon-in-possession indictment. (ECF No. 6 at 5–9.) In response, Karwacki insists that, unlike the defendant in *Neal*, he is not a convicted *felon*. He argues that because he has only been convicted of a misdemeanor, Wisconsin cannot constitutionally deprive him of his right to possess a firearm. (ECF No. 8 at 8–9.) He further maintains that Section 941.29(1m)(b) effectively transforms his misdemeanor into a felony for the sole purpose of depriving him of his Second Amendment rights. (*Id.* at 7–8.)

Karwacki is correct that *Neal* involved a defendant who had been convicted of multiple "felony" offenses. *See Neal*, 2024 WL 1794424, at *1. He is also correct that he has never been convicted of a "felony" offense. But his preoccupation with the term "felony" misses the underlying point. The caselaw confirms that a state may, consistent with the Second Amendment, prohibit individuals whom it reasonably deems dangerous from possessing firearms. *See, e.g., Rahimi*, 602 U.S. at 699. Being a convicted felon is just *one* example of the types of individuals who may be considered sufficiently dangerous to ban their possession of a gun. And it is undisputed that Karwacki has engaged in conduct that Wisconsin deems sufficiently dangerous that it would preclude him and all others who engage in such conduct from possessing a firearm. Karwacki has been formally convicted of delivering peyote, a plant that contains psychoactive alkaloids. Although that conduct may be deemed a misdemeanor in military court, Wisconsin considers that conduct more dangerous and a felony. *See* Wis. Stat. §961.41(1)(a). And, Wisconsin goes a step further under Section 941.29(1m)(b) by making any conviction for that conduct a ground to deny possession of a firearm. This decision—to keep firearms out of the

hands of individuals who have violated the law by engaging in conduct deemed dangerous in this state—does not run afoul of the Second Amendment.

Karwacki stands convicted of delivering peyote. In *Bruen*, the majority emphasized that "the Second and Fourteenth Amendments protect the right of an *ordinary, law-abiding citizen* to possess a handgun . . . for self-defense." 597 U.S. at 8–9 (emphasis added). It characterized the *Bruen* petitioners as "two ordinary, law-abiding, adult citizens," who were "part of 'the people' whom the Second Amendment protects" and used the specific phrase "law-abiding" citizens no less than fourteen times in describing the holders of Second Amendment rights. *Id.* at 9, 15, 26, 29–31, 33 n.8, 38, 38 n.9, 60, 70–71. The *Rahimi* Court invoked this language to uphold a law that stripped a dangerous citizen of his gun rights. 602 U.S. at 693. Karwacki is not a law-abiding citizen. He has been convicted of conduct that Wisconsin deems sufficiently dangerous that it precludes anyone convicted of such offenses from possessing firearms. Wisconsin's judgment in enacting that regulation is consistent with Supreme Court and Seventh Circuit precedent, as well as this Court's prior rulings. In sum, Wisconsin may constitutionally restrict firearm access for dangerous, non-law-abiding criminals, regardless of whether the individual is labeled a felon.

Karwacki also argues that because his peyote conviction did not involve violent conduct, it cannot be used to bar him from possessing a firearm. (ECF No. 8 at 9.) Defendant contends, however, that a person convicted of drug dealing, even if nonviolent, is not among the "ordinary, law-abiding citizen[s]" protected by the Second Amendment. (ECF No. 9 at 8–9 (alteration in original) (quoting *Bruen*, 597 U.S. at 8–9).) In *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010), the Seventh Circuit addressed a similar issue in holding that a statute stripping a drug addict of his gun rights was constitutional. The Court of Appeals explained that the government may constitutionally disarm dangerous citizens and that laws separating guns and drugs are constitutional. *Id.* at 684–87. Only a year ago, this Court relied upon *Yancey* to confirm that a habitual marijuana user can be stripped of his gun rights. *United States v. McDaniel*, Case No. 22-cr-0176-bhl-1, 2024 WL 2513641 (E.D. Wis. May 24, 2024). Both *Yancey* and *McDaniel* analyzed the connection between drug use and violence. Karwacki's conviction for drug delivery fails based on that same logic. A person convicted of drug possession, use, or distribution engages in conduct that the legislature has deemed dangerous and is therefore subject to the loss of his or her right to possess a firearm. Because Wisconsin may constitutionally deny Karwacki the ability to possess a gun within its borders, his as applied challenge fails.

## II. The Failure of Karwacki's As Applied Challenge Precludes His Facial Challenge.

Karwacki also brings a facial challenge to Wis. Stat. §941.29(1m)(b). A claim that a statute is facially unconstitutional is the "most difficult challenge to mount successfully," because the challenger must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Where both as applied and facial challenges are pursued, the Seventh Circuit has instructed district courts to decide the as applied challenge first because, if the as applied challenge fails, then the facial challenge necessarily fails. *See Doe v. Heck*, 327 F.3d 492, 527–28 (7th Cir. 2003) (citation omitted). As explained above, Karwacki's as applied challenge has failed. Accordingly, his facial challenge also fails, and his lawsuit will be dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Defendant's motion to dismiss, ECF No. 5, is **GRANTED**, and the case is **DISMISSED**. The Clerk is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on July 9, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge